**HARDWARE MUT. CASUALTY CO. v. SCHANTZ et al.**

No. 13279.

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1951.

J. L. Lancaster, Jr., A. W. Walker, Jr., Dallas, Tex., for appellant.

Earl W. Smith, San Angelo, Tex., for appellees.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

BORAH, Circuit Judge.

On April 12, 1947, Hardware Mutual Casualty Company issued to A. R. Schantz and E. E. Schantz, doing business as Electric Service Company, a policy of liability insurance, pursuant to which the casualty company agreed to indemnify the insured against loss by reason of liability for damages caused by accident and arising out of the operations specifically set forth and at the location stated in the policy, with certain exceptions and under conditions specified which will hereinafter be discussed.

On September 21, 1947, while the policy was in effect, the B & W Engineering and Manufacturing Company brought an electrict hoist to assured's place of business to be repaired. The repairs were made and the hoist was delivered to Wendland Manufacturing Company, its owner, on September 23, 1947. On the same day and after the hoist had been delivered to the premises of its owner, Willard R. Farris, an employee of Wendland, was fatally injured as the result of an accident sustained while working with the hoist.

After being notified of the accident and the death of Farris the insurance company, acting under a nonwaiver agreement, made an investigation and notified the assured that the policy of insurance did not afford any protection for liability arising from the accident. Thereafter Mrs. Farris, a widow, for herself and as guardian of her minor children, filed a suit against Electric Service Company and B & W Engineering and Manufacturing Company in the District Court of Tom Green County, Texas, for damages, alleging that the defendants and each of them were guilty of negligence proximately causing the death of Farris in that they used a soft metal of insufficient strength to set the new cable in the ball of the hoist and as a result the insecurely fastened cable pulled out of the ball, dropping Farris along with a large piece of sheet iron to the floor. The assured demanded of the insurance company that it accept the defense of this damage suit but it refused to do so.

On September 24, 1948, Hardware Mutual filed this suit for a declaratory judgment against A. R. Schantz, Clara Lee Schantz, independent executrix of the estate of E. E. Schantz, deceased, Hazel Ruth Farris, a widow, individually and as guardian of her minor children, to have adjudicated the question of whether or not it was required to defend the State court action for and on behalf of assured. On motion of the defendants the court below dismissed the action for want of jurisdiction on the theory that the amount in controversy, being undetermined, was not in excess of $3,000. On appeal the judgment of the trial court was reversed and remanded. Hardware Mut. Casualty Co. v. Schantz, 178 F.2d 779.

While this suit was pending on appeal Hardware Mutual filed a second suit in the District Court against the same parties, pleading substantially as it has plead in the present suit. After the second suit was filed Employers Mutual Casualty Company, the workmen's compensation carrier who

paid compensation death claim to the beneficiaries of Willard R. Farris, deceased, intervened in the State court action, praying that it be subrogated to the rights of plaintiffs. In an amended plea intervener alleged that the hoist was returned to Wendland on September 23, 1947, and following its return the defendants sent their employees back to Wendland's place of business to grease the hoist; that the operation of effecting repairs to the hoist was complete in every respect except the final attachment of the cable thereto; and that at the time of the accident the cable had not been attached to the hoist and defendants had not completed their operation of effecting repairs. And in specification of the acts of negligence attributable to defendants, intervener charges that one or more of the following acts of negligence was the proximate cause of Farris' death: (1) In returning the hoist to the Wendland Manufacturing Company prior to all repairs on the hoist being completed; (2) in representing to the Wendland Manufacturing Company and others that the job and operation of effecting repairs to the hoist had been completed when in truth and in fact said repairs were not completed; (3) in failing to warn the Wendland Manufacturing Company and Willard R. Farris, deceased, of the fact that the job and operation of effecting repairs to the hoist had not been completed. Upon receipt of the amended plea of intervention Hardware Mutual filed a motion to dismiss the second declaratory judgment suit without prejudice, admitting in its motion that the allegations contained in the plea of intervention obligated it to defend the State court action. The motion was granted.

When the second suit was dismissed the assured mailed all papers and files in the State court action to Hardware Mutual and again requested that it take over the defense of the suit but it again refused and the papers were returned. The assured thereupon undertook the defense of the suit and on May 27, 1949 the controversy was settled by an agreement and compromise between the parties which the State court approved and incorporated in its judgment. In defending, settling and disposing of this damage suit the assured expended the sum of $5,000 and in consequence is here by way of cross action, seeking a judgment declaring that appellant, Hardware Mutual, was obligated under its policy contract to defend the suit in the State court and having refused to do so is liable to appellees for the sum of $5,000.00 which it expended.

The policy in question was issued by the appellant on April 12, 1947, for a period of one year and is entitled "Schedule General Liability Policy." The policy contains the declaration that A. R. Schantz and E. E. Schantz, doing business as Electric Service Company, are the named insured and that the location of the premises insured under Division 1 is "926–32 Pulliam Street, San Angelo, Texas and elsewhere in Texas as business requires." Under "Conditions 3" of the policy the word "premises" is defined as follows: "The unqualified word 'premises' wherever used in this policy shall mean (a) the premises designated in the declarations, including buildings and structures thereon and the ways immediately adjoining, * * * and the unqualified word 'premises' wherever used in Division 1 of the Definition of Hazards and in other parts of this policy, when applicable to such Division 1, shall also mean, when a territory is designated in addition to a specific location, places within said territory while used by or on behalf of the named insured, except public ways used in common with others. * * *"

Under "Insuring Agreements" the policy provides: "Coverage A. Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined." Item 8 contains the further declaration that, "The insurance afforded is only with respect to such and so many of the coverages and divisions as are indicated by specific premium charge or charges. * * *"

It is here conceded that the only coverage for which assured paid a premium was that afforded under Division 1 of the Definition of Hazards. That hazard as defined in the policy under "Division 1. Operations and Premises (Manufacturers' and Contractors')" is "(a) All operations during the policy period which are necessary or incidental to the ownership, maintenance or use of the premises, and (b) the ownership, maintenance or use of the premises."

Division 4 of the "Definition of Hazards" and for which no premium was paid by assured reads as follows: "Division 4. Product. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the insured if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured; * * * operations covered under Divisions 1, 2 and 6 of the Definition of Hazards, other than pick-up and delivery (except misdelivery) and the existence of tools, uninstalled equipment and abandoned or unused materials if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured." The policy further provides under "Exclusions": "This policy does not apply: * * * (d) under Divisions 1, 2 and 6 of the Definition of Hazards, to liability with respect to which insurance is or can be afforded under Division 4 of the Definition of Hazards; or to operations on or from other premises which are owned, rented or controlled by the insured."

Under "Definition of Hazards" the policy further provides: "As respects such insurance as is afforded by this policy the company shall (a) defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company."

The case was tried by the court without a jury and the court, in its oral opinion, found: (1) That the "impedimente" of this case was covered by the insurance policy; (2) that the amount of the settlement of the $115,000 suit that was brought as the result of the death of Farris was a fair and good settlement; and (3) that the attorneys for the appellees received fair and reasonable compensation for the work which they had to do because of appellant's failure to assume the defense of the State court action. Accordingly, the court concluded that the appellees should have judgment for $5,000. The judgment which was entered pursuant to the court's direction recites that defendants, A. R. Schantz, Woodrow W. Jackson and W. W. Herbert, a copartnership, should recover from plaintiff, Hardware Mutual Casualty Company, the sum of $5,000 and costs. From this judgment Hardware Mutual appeals.

Appellant presents two main points of error: First, that there was no liability under the policy and the trial court erred in holding that Hardware Mutual was not entitled to a declaration of non-coverage and non-liability; second, that the trial court erred in entering judgment in favor of Woodrow W. Jackson and W. W. Herbert, who were not parties to the litigation.

█ The appellant denies the existence of coverage on the ground that the policy did not provide any protection for accidents arising out of an operation which had been completed or abandoned by assured, unless such accident occurred on the premises specified in the policy, and did not provide any protection for accidents arising out of the handling, use of or existence of any condition in goods or products handled or manufactured by assured if the accident occurred off the specified premises, citing Standard Accident Insurance Company v. Roberts, 8 Cir., 132 F. 2d 794; Berger Bros. Electric Motors, Inc., v. New Amsterdam Casualty Co., 293 N.Y. 523, 58 N.E.2d 717, 156 A.L.R. 1281; Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A.2d 920, and similar cases. The policy in suit, however, does not clearly so limit the coverage, but in language which is not free from all ambiguity defines the hazard

as including not only "all operations during the policy period which are necessary or incidental to the ownership, maintenance or use of the premises" but also "the ownership, maintenance or use of the premises" for the purpose stated in the declarations. It appearing from the declarations that the business of the insured was "Electric Service Company" and that the location of the premises insured was "926–32 Pulliam Street, San Angelo, Texas and elsewhere in Texas as business requires" the policy may be fairly and reasonably construed to mean that it covers all operations, whether on the premises or elsewhere, which are necessary or incidental to the declared use of the premises, and that such operations would include the uncompleted operations of effecting repairs to a hoist at a place other than the premises named in the policy. Boutwell v. Employer's Liability Assurance Corp., 5 Cir., 175 F.2d 597, 598. Lloyds Casualty Insurer v. McCrary, Tex. Sup., 229 S.W.2d 605, 609.

The appellant next contends that even if the policy covers operations away from the named premises it does not apply here because it was expressly stipulated by and between the parties that the accident occurred after the hoist had been repaired and after the hoist had been returned to the premises of its owner and therefore the accident was one which could be covered only by "Division 4. Product"; and by virtue of "Exclusion (d)" to the effect that the policy does not apply under Division 1 to liability for which protection could be afforded under Division 4 of said policy no coverage was or could be afforded appellees under Division 1. We agree that the policy does not apply under Division 1 to liability for which protection could be afforded under Division 4 and that if appellees had fully completed their operation of effecting repairs to the hoist and the hoist had been returned to its owner there would have been no liability under the policy. By its terms the "Product" coverage clearly applies where the accident occurs after the insured's operations have been completed or abandoned at the place of occurrence and away from insured's premises. However, the "Product" coverage is rendered inapplicable by the facts which were alleged in the damage suit against the insured. There it was alleged that the cable had not been attached to the hoist at the time of the accident and appellees had not completed their operation of effecting repairs to the hoist.

The policy in suit is one of indemnity. It bound appellant to defend suits for damages arising from causes and under conditions specified in the policy. It is a well established rule that the insurer under such a policy cannot be called upon to defend a suit against the assured in which the petition upon its face alleges a state of facts not caused by but excluded from the provisions of the policy. However, the converse is equally true and the insurer is required under the terms of its policy to defend and pay the amount of the judgment, costs and expenses, in the event of a recovery, where, as in the Farris suit, the pleadings clearly reveal a state of facts that are covered by the policy.

Having failed and refused to entertain the defense of the State suit and having made no protest against the settlement and having failed to show that the settlement charges and expenses were unreasonable, the court below rightly held that plaintiff should take nothing by its suit and that defendants should have and recover against plaintiff the sum of $5,000 and costs. The judgment which was entered pursuant to the court's direction contains the foregoing recital but in particularizing as to who are the parties defendants in whose favor the judgment should run it names A. R. Schantz, Woodrow W. Jackson and W. W. Herbert. But Jackson and Herbert were not parties to the litigation and have no right to stand in judgment. The named defendants before the court were A. R. Schantz and Clara Lee Schantz, independent executrix of the estate of E. E. Schantz, deceased, and they, and they alone, are the parties who should have and receive from plaintiff, Hardware Mutual Casualty Company, the sum of $5,-

000 and costs. Accordingly the judgment must be, and it is hereby, modified to run in their favor. As thus modified the judgment will conform to and be supported by the pleadings in the case.

Affirmed and rendered.